STATE of Missouri, Respondent,

v.

Arnold L. TAYLOR, Appellant.

No. ED 96299.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 21, 2012.

Jo Ann Rotermund, St. Louis, MO, for appellant.

Mary Highland Moore, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Arnold Taylor (Defendant) appeals the judgment of the Circuit Court of the City of St. Louis following his conviction of one felony count of possession of a controlled substance with intent to distribute, two felony counts of possession of a controlled substance, one misdemeanor count of possession of drug paraphernalia with intent to use, and one misdemeanor count of possession of a controlled substance. We affirm, and remand with directions.

### Background

In October or November 2009, Detective David Rudolph of the St. Louis Metropolitan Police Department received a tip from a confidential informant that three broth-

ers with the last name Taylor were engaging in "narcotic sales and weapons possession" out of a residence at 5029 Aubert Avenue. Detective Anthony Boettighmer, Detective Rudolph's partner, obtained a search warrant for the residence.

On November 4, 2009, with the assistance of other detectives and the St. Louis Metropolitan Police Department's "mobile reserve unit," Detectives Rudolph and Boettighmer executed the search. After the mobile reserve unit announced the police officers' presence and broke down the front door, Detectives Rudolph and Boettighmer entered the house and observed Defendant's mother, Juanita Taylor, Defendant's brother, Michael Taylor, and a man by the name of Deandre Battle in the living room.

Meanwhile, as the mobile reserve unit broke through the front door, Detective Martin Garcia was stationed in the rear of the house. Approximately five seconds after hearing the mobile reserve team force open the front door, Detective Garcia observed Defendant sprint out of a back door of the house that opened to the basement. Detective Garcia yelled at the Defendant to stop and show his hands. Defendant stopped, and police officers detained him. Detective Garcia then walked Defendant back through the house to the living room area, where he was detained with Juanita,[1] Michael, and Deandre Battle while police officers searched the house. Juanita, who owned the residence, told Detective Rudolph that Defendant slept in the basement and "[had] the entire basement to himself."

Detectives Rudolph, Boettighmer, and Garcia searched the basement. Detective Rudolph observed that there was a bed in the basement and that "it appeared somebody was sleeping in the basement." The

detectives found an open box of sandwich bags and several personal papers addressed to Defendant on a metal desk next to the bed. On the floor beside the bed, the detectives located an empty Enfamil canister containing a black digital scale, Defendant's expired Missouri identification card, five .38 caliber rounds of ammunition, two .410 caliber rounds of ammunition, and one 9–millimeter round of ammunition.

On top of a broken ceiling tile in the basement bathroom, the detectives found a "clear knotted plastic bag" containing Dormin pills, heroin, cocaine, cocaine base, and marijuana. The detectives also found a knotted plastic bag of black tar heroin in the pocket of a shirt hanging on a clothesline. After removing the access panel on the basement dryer, the detectives found "numerous knotted plastic bags of black tar heroin and also cocaine." Under a chair cushion, the detectives located two glass plates, a razor blade, a coffee grinder, a toothbrush, and a digital scale. The detectives also found Defendant's cellular phone on a table next to the chair.

After searching the basement, the detectives went upstairs to tell Defendant what they had found. While they were listing the items, Defendant admitted that he "stay[ed]" in the house and that "all the items were his."

Detectives Rudolph and Boettighmer later interviewed Defendant again at the police station. During the interrogation, Defendant stated: "[L]ook, I'm not a big, big time drug dealer, I'm a small time guy. I just sell enough to get by." Defendant then composed a signed, written statement stating that "the heroin, cocaine, and ammo did belong to [him]," and that his "brother, mother, and other family members had no knowledge of it."

1. Because several members of the Taylor family have the same last name, we refer to them using their first names. No disrespect is intended.

The State charged Defendant with one felony count of possession of a controlled substance with intent to distribute, two felony counts of possession of a controlled substance, one misdemeanor count of possession of drug paraphernalia with intent to use, and one misdemeanor count of possession of a controlled substance. The State charged Defendant as a prior and persistent drug offender pursuant to Sections 195.275 and 195.285, and a prior and persistent offender pursuant to Sections 557.036 and 558.016.[2] At trial, Defendant recanted his written confession and insisted that he did not live at 5029 Aubert Avenue and did not know about the drugs and paraphernalia. Nevertheless, the jury found Defendant guilty on all counts. The trial court sentenced Defendant to concurrent sentences of twenty years' imprisonment on each of the felony counts and one year confinement on each of the misdemeanor counts. Defendant appeals.

### Discussion

Defendant asserts five points on appeal. Defendant claims that the trial court erred by: 1) denying his motion for a judgment of acquittal because the State failed to present sufficient evidence that Defendant "purposefully and/or knowingly" possessed the controlled substances (Point I); 2) permitting the State to present hearsay testimony regarding the statements of a confidential informant at trial (Point II); 3) denying his motion to suppress evidence seized from the house at 5029 Aubert Avenue because the seizure resulted from an invalid search warrant issued without probable cause (Point III); 4) refusing to instruct the jury as to the lesser included offense of possession of a controlled substance on the count of possession of a controlled substance with intent to distribute (Point IV); and 5) finding Defendant

to be a prior and persistent felony offender and prior and persistent drug offender (Point V).

### 1. Sufficiency of the Evidence

In Point I, Defendant contends that the trial court erred in denying his motion for a judgment of acquittal because the State failed to present sufficient evidence that he was guilty of the crimes with which he was charged. More specifically, Plaintiff contends that "the State did not present any evidence from which a rational trier of fact could have reached a 'subjective state of near certitude' that [Defendant] purposefully and/or knowingly possessed [the] drugs."

In reviewing the sufficiency of the evidence, we limit our review "to a determination of whether there is sufficient evidence from which a reasonable fact-finder could find the defendant guilty beyond a reasonable doubt." *State v. French*, 308 S.W.3d 266, 272 (Mo.App. E.D.2010). "[W]e view the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the State and disregard all evidence and inferences to the contrary." *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). It is within the province of the jury to decide the credibility and weight of a witness's testimony. *State v. White*, 247 S.W.3d 557, 563–64 (Mo.App. E.D.2007). The jury may believe all, some, or none of the testimony of any witness. *State v. Lee*, 332 S.W.3d 267, 270 (Mo.App. E.D.2011). The jury also resolves all conflicts in the evidence, and we will not second guess the jury's judgment. *White*, 247 S.W.3d at 563–64.

In order to convict a defendant of possession of a controlled substance

**2.** All statutory references are to RSMo (2000) as supplemented.

with intent to distribute, the State must prove: "(1) conscious and intentional possession of the controlled substance, either actual or constructive; (2) awareness of the presence and nature of the substance; and (3) intent to distribute it." *State v. Gonzalez*, 108 S.W.3d 209, 211 (Mo.App. S.D.2003). To sustain a conviction for mere possession of a controlled substance, the State need only prove the first two elements and need not prove intent to distribute. *See State v. Tomes*, 329 S.W.3d 400, 403 (Mo.App. E.D.2010). In this particular case, to convict Defendant of possession of drug paraphernalia with intent to use, the State was required to prove that Defendant (1) possessed drug paraphernalia; (2) with intent to use it to prepare and pack a controlled substance. *See* Mo.Rev.Stat. § 195.233.1.[3]

■ Defendant first contends that the State failed to establish that Defendant had constructive possession of the contraband found at 5029 Aubert Avenue. In support of this argument, Defendant contends that the State failed to prove that Defendant lived at 5029 Aubert Avenue, there was evidence that other persons had access to 5029 Aubert Avenue, and that Defendant's mere presence at 5029 Aubert Avenue was insufficient evidence to convict him of possessing the contraband. Defendant's contentions are without merit.

■■ Constructive possession of a controlled substance exists when a person, "although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons." Mo.Rev.Stat. § 195.010(34). To prove constructive possession, the State must show that the defendant, at a minimum, "had access to and control over the premises where the substance was found." *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). In the event that there is evidence of joint control over the premises, then the State must present "further evidence" connecting the Defendant with the drugs. *State v. Bristol*, 98 S.W.3d 107, 111 (Mo.App. W.D. 2003). This evidence can include: "self-incriminating statements; consciousness of guilt; routine access to the place where the substance was located; commingling of the controlled substance with the defendant's personal belongings; a large quantity of the illegal substance at the scene; and the subject of the controversy in public view." *Id.* at 111 n. 1.

Here, there was ample evidence that Defendant had constructive possession of the drugs and paraphernalia. Defendant's access to and control of the basement was established by his mother's statement to Detective Rudolph that Defendant slept in the basement and "had the entire basement to himself." Defendant also admitted to police detectives that he "stay[ed]" in the house. Even if we agree with Defendant that the evidence showed other persons had access to the basement, the State proffered sufficient "further evidence" linking Defendant to the contraband. *Bristol*, 98 S.W.3d at 111. Police officers apprehended Defendant as he was fleeing from the basement where the drugs and paraphernalia were found. Police officers found some of Defendant's

---

**3.** Section 195.233.1 provides:

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or an imitation controlled substance in violation of sections 195.005 to 195.425.

Mo.Rev.Stat. § 195.233.1. The State charged Defendant specifically in the indictment with intending to use

personal belongings in the basement. Importantly, Defendant admitted to Detectives Rudolph and Boettighmer that the "all the items [found during the search] were his," and that he was a "small-time" drug dealer. Finally, Defendant signed a written confession admitting that the heroin and cocaine belonged to him.

Defendant cites *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975), *State v. Barber*, 635 S.W.2d 342 (Mo. banc 1982), *State v. Bowyer*, 693 S.W.2d 845 (Mo.App. W.D. 1985), and *State v. Ray*, 747 S.W.2d 765 (Mo.App. E.D.1988) for the principle that a defendant's mere presence at a location where contraband is found is not sufficient to show possession. However, the State did not rely solely on Defendant's proximity to the contraband to support the inference that he constructively possessed it.

Defendant further contends that even if the State presented sufficient evidence to establish that Defendant constructively possessed the contraband, it failed to present sufficient evidence that Defendant's possession was knowing and intentional. This argument is also without merit. The State presented evidence that Defendant told Detectives Boettighmer and Rudolph that he was a "small time" drug dealer and that "all the items were his." Defendant also composed and signed a written confession admitting to possession of the heroin and cocaine. The jury was entitled to believe Defendant's previous out-of-court statements even if he subsequently testified differently at trial. *See State v. Sherrill*, 657 S.W.2d 731, 738 (Mo.App. S.D. 1983). Point denied.

## 2. Hearsay Testimony

In Point II, Defendant contends that the trial court erred by permitting Detective Rudolph to testify that he received information from a confidential informant about narcotic sales and "weapons possession" at 5029 Aubert Avenue and that the confidential informant told him that Defendant "was one of the people selling drugs." Defendant contends that Detective Rudolph's hearsay testimony violated his right to confront the witnesses against him because "the state did not show that the confidential informant was unavailable to testify at trial and because [Defendant] did not have the opportunity to cross-examine him." In response, the State contends that the relevant testimony from Detective Rudolph was not hearsay because the State offered it to explain subsequent police conduct. The State further contends that, even if the testimony was hearsay, Defendant did not suffer any prejudice.

■ "A trial court has broad discretion to admit or exclude evidence at trial[,]" and we will reverse the trial court "only if the court has clearly abused its discretion." *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). An abuse of discretion occurs "when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Kemp*. 212 S.W.3d 135, 145 (Mo. banc 2007) (*quoting State v. Forrest*. 183 S.W.3d 218, 223 (Mo. banc 2006)).

■ "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in that statement." *Doe v. McFarlane*, 207 S.W.3d 52, 72 (Mo.App. E.D.2006). Generally, hearsay is inadmissible. *State v. Gray*, 347 S.W.3d 490, 500 (Mo.App. E.D.2011). "However, statements that are not offered for the truth of the matter asserted, but rather to explain subsequent actions, are not hearsay." *State v. Barnett*, 980 S.W.2d 297, 306 (Mo. banc 1998). If a statement is not offered to prove the truth of the matter asserted, then the defendant's right to confront the witnesses against him is not implicated. *State v. Allison*, 326 S.W.3d 81, 90 (Mo.

App. W.D.2010) (*citing Crawford v. Washington,* 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)).

■ At trial, in response to a question regarding how the address of 5029 Aubert Avenue came to his attention, Detective Rudolph testified that he "had received information from a confidential source relative to narcotics sales and weapons possession that were occurring out of [5029 Aubert Avenue]." Defense counsel objected to Detective Rudolph's hearsay statement on the grounds that it violated Defendant's right to confront the witnesses against him. The court, however, ruled that the statement was admissible because it was not offered to prove the truth of the matter asserted, but rather to "support further conduct." After some additional questions, Detective Rudolph testified that the confidential informant also told him that the "drugs were sold from the north gangway and the rear yard of [the] residence," and that Defendant, Robert, and Michael were the persons selling the drugs. The prosecutor then asked: "And based on the information that [the confidential informant] told you about narcotic sales going on at 5029 Aubert what steps did you take yourself to learn more about this address?," and Detective Rudolph recounted the subsequent steps of the investigation.

■ When considered in the context of the State's direct examination, it is clear that the State offered Detective Rudolph's testimony to explain the reason for subsequent police conduct and not to prove the truth of the matter asserted. *See, e.g., State v. Allison,* 326 S.W.3d 81, 90 (Mo. App. W.D.2010). Specifically, Detective Rudolph's testimony explained to the jury why the police focused their investigation on a particular address and particular suspects. Out-of-court statements offered to explain subsequent police conduct and pro-

vide relevant background are admissible. *State v. Dunn,* 817 S.W.2d 241, 243 (Mo. banc 1991).

Defendant relies on *State v. Shigemura,* 680 S.W.2d 256 (Mo.App. E.D.1984) for the principle that an officer can describe his reasons for being at the site of a defendant's arrest without resorting to the statements of a confidential informant. *See id.* at 258. In *Shigemura,* a police officer testified that a confidential informant had told him that the defendant was in possession of stolen goods that he was going to sell at a certain restaurant. *Id.* at 257. On appeal, the court held that the testimony constituted inadmissible hearsay and its admission was "prejudicial error" because, instead of merely explaining a police officer's subsequent conduct, it provided a valuable piece of evidence proving that defendant knew the goods were stolen, an essential element of the State's case. *Id.* at 257. The court pointed out that the other evidence proving the defendant's knowledge was "not strong." *Id.* at 257.

Here, in contrast, the statements of the confidential informant were not critical to proving the State's case. *See, e.g., State v. Lockett,* 165 S.W.3d 199, 205 (Mo.App. E.D.2005) (distinguishing *Shigemura* on the grounds that the relevant hearsay "was not used to prove an element of the crime.") As we explained in Part 1, *supra,* there was ample evidence upon which to convict Defendant of the crimes with which he was charged. The statements of the confidential informant provided background information and explained to the jury why the detectives focused their investigation on 5029 Aubert Avenue and the three Taylor brothers. Point denied.

**3. Motion to Suppress**

In Point III, Defendant asserts that the trial court erred by denying his pre-trial

motion to suppress the controlled substances and drug paraphernalia found during the search of 5029 Aubert Avenue. More specifically, Defendant contends that the search warrant permitting the police to search the house was invalid because it was not based on probable cause.

■ As previously stated, we will only reverse a trial court's decision to admit or exclude evidence if we find an abuse of discretion. *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). An abuse of discretion is a ruling that "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007) (*quoting State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006)).

■ To determine whether probable cause supports the issuance of a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular case." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). On review, our task "is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317 (*quoting Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). In so doing, we "may not look beyond the four corners of the warrant application and the supporting affidavits." *State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007). "We give great deference on review to the initial judicial determination of probable cause made at the time of the issuance of the warrant and we reverse

only if that determination is clearly erroneous." *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990).

■ In this case, Detective Boettighmer filed an affidavit in support of the issuance of a search warrant for 5029 Aubert Avenue. Detective Boettighmer's affidavit stated that a confidential informant had informed him and Detective Rudolph that three brothers with the last name Taylor were engaging in "ongoing weapon and narcotic violations" at 5029 Aubert Avenue. The confidential informant revealed that the three brothers trafficked in cocaine and heroin and "conduct[ed] their narcotic transactions either in the north gangway or in the backyard of the residence in order to keep their illegal activity hidden."

According to the affidavit, the confidential informant was able to identify the three brothers as Defendant, Michael, and Robert Taylor from photographs generated using a police department database. A search using the three brothers' FBI numbers revealed that Defendant had felony convictions for unlawful use of a weapon and violation of the Missouri controlled substances law; Robert had felony convictions for unlawful use of a weapon, violation of the Missouri controlled substances law, and first-degree tampering; and Michael had multiple felony convictions for unlawful use of a weapon.

Detective Boettighmer further affirmed that he and Detective Rudolph had conducted surveillance of 5029 Aubert Avenue. During the first surveillance, the detectives observed a man who they believed to be Defendant, along with another man they believed to be Robert or Michael, standing on the front porch of the residence. During the second surveillance, Detectives Rudolph and Boettighmer saw two individuals exit a green sedan and

walk towards the residence. A man standing on the front porch, who the detectives believed to be Defendant, motioned for the two individuals to go around to the backyard. After "approximately two to three minutes," the two individuals re-emerged from behind the house, got into their car, and left.

The warrant affidavit further stated that the confidential informant had been in the residence two times in the previous thirty-six hours and had observed Defendant, Robert, and an unknown person named Jeff in possession of cocaine, heroin, and firearms. Detective Boettighmer affirmed that this same confidential informant had previously provided information leading to a search warrant and an arrest for drug possession. Detective Boettighmer also affirmed that, based upon his training and experience, the three brothers' "method of operation [was] consistent with that of narcotic trafficking."

Defendant asserts Detective Boettighmer's affidavit was not sufficient to support probable cause because the only corroboration of the confidential informant's statements was "two black men on the porch of the residence and two black visitors." However, Defendant cites no factually analogous cases supporting his argument. Furthermore, Defendant does not acknowledge the other corroborating facts in the affidavit that were not related to Detective Rudolph and Boettighmer's surveillance of the house.

We find *State v. Neher*, 213 S.W.3d 44 (Mo. banc 2007), helpful in this case. In *Neher*, a sheriff secured a search warrant for the defendant's residence by relying on an affidavit affirming that a confidential informant had stated that the defendant was "cooking meth late [the previous] night." 213 S.W.3d at 46. The affidavit also stated that the defendant was a "known drug user, and manufacturer" with "a criminal history of possession of a controlled substance," and that the defendant was associating with another person who had "an extensive criminal history involving dangerous drugs including Methamphetamine." *Id.*

The *Neher* court found that the affidavit was sufficient to support a finding of probable cause. *Id.* at 51. The Court ruled that the affidavit was not deficient because it contained hearsay, holding that: "An affidavit that relies on hearsay is sufficient to support a finding of probable cause if there is a substantial basis for crediting the hearsay." *Id.* at 49. The Court then found a substantial basis for crediting the confidential informant's hearsay because the magistrate could have inferred that the informant's statements were based upon personal observations. *Id.* at 50. The Court also found that "[t]here was ample corroboration to establish the confidential informant's veracity" because the affidavit stated that the confidential informant had previously been found reliable, the information from the confidential informant was "fresh," and the defendant was a "known drug user and manufacturer" who was associating with another person with an extensive drug history.

Like the warrant application in *Neher*, Detective Boettighmer's affidavit was sufficient to support probable cause. The issuing court could credit the hearsay in the affidavit because the confidential informant personally observed Defendant with drugs and firearms inside the residence. Furthermore, although Defendant contends that the only corroboration obtained by the detectives in this case was "two black men on the porch of the residence and two black visitors," *Neher* supports the principle that a confidential informant's statements can be corroborated by means other than surveillance. Here, as in *Neher*, the affidavit contained sufficient

corroboration because it affirmed the confidential informant's prior reliability, demonstrated that the information provided by the confidential informant was "fresh," and stated that Defendant had prior convictions for drug and weapons crimes and was associating with other persons convicted of drug and/or weapons offenses. *Id.* at 49–50.

In short, "[u]nder the totality of the circumstances, the issuing judge had a substantial basis for concluding there was a fair probability that contraband and evidence of criminal activity would be found at [Defendant's] residence." *Neher,* 213 S.W.3d at 51. We therefore conclude that the trial court did not err in overruling Defendant's motion to suppress. Point denied.

### 4. Jury Instruction

In Point IV, Defendant contends that the trial court erred in refusing to instruct the jury as to the lesser included offense of possession of a controlled substance on the count of possession of a controlled substance with intent to distribute. Defendant asserts that there was a basis in the evidence for the jury to acquit him on the greater offense of possession of a controlled substance with the intent to distribute and convict him of the lesser offense of mere possession of a controlled substance.

 "In reviewing whether a trial court erred in failing to instruct the jury on a lesser-included offense, we review the evidence in a light most favorable to the defendant." *State v. Newberry,* 157 S.W.3d 387, 393 (Mo.App. S.D.2005). An instruction on a lesser included offense is not required "unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Mo.Rev.Stat. § 556.046.2. To acquit of the greater offense, there must be "some evidence that an essential element of the greater offense is lacking and the element that is lacking must be the basis for acquittal of the greater offense and the conviction of the lesser." *State v. Greer,* 348 S.W.3d 149, 154 (Mo.App.E.D.2011) (*quoting State v. Pond,* 131 S.W.3d 792, 794 (Mo. banc 2004) (internal quotation marks omitted)). "[A] lesser[-]included[-]offense instruction is not required where there is strong and substantial proof of the offense charged, and the evidence does not suggest a questionable essential element of the more serious offense charged." *Greer,* 348 S.W.3d at 154 (*quoting Becker v. State,* 260 S.W.3d 905, 910 (Mo.App. E.D.2008) (internal quotation marks omitted)). The test we apply is whether "a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established." *Greer,* 348 S.W.3d at 154 (*quoting State v. Williams,* 313 S.W.3d 656, 660 (Mo. banc 2010) (internal quotation marks omitted)).

 Here, there was strong and substantial proof of Defendant's intent to distribute and no reasonable juror could draw an inference from the evidence presented that the State failed to establish that element of the charge.[4] Though Defendant contends that a jury could rationally acquit him of possession of heroin with intent to distribute because "Defendant's statement that he possessed heroin did not state he admitted to selling or intending to sell heroin[,]" Defendant ignores the fact that he orally confessed to Detectives Rudolph

---

**4.** Defendant was charged with one count of possession of a controlled substance with intent to distribute based solely on Defendant's possession of heroin, not the other drugs found in Defendant's possession. the paraphernalia to "prepare and pack" a controlled substance.

and Boettighmer that he was a "small time" drug dealer. Furthermore, the police officers found approximately ten grams of heroin at Defendant's residence valued at "about a thousand dollars." Detective Rudolph testified that, in his opinion, such an amount was not for personal use. *See State v. Salyer,* 884 S.W.2d 354, 357 (Mo.App. S.D.1994). Moreover, the police officers found some of the heroin in thirty-eight individually packaged baggies, and Detective Rudolph testified at trial that the heroin was "packaged so that it [could] quickly be sold." *See, e.g., State v. Duff* 281 S.W.3d 320, 328 (Mo.App. W.D. 2009) (fact that drugs were "individually-wrapped" was probative of intent to distribute). Finally, the detectives also found a large amount of paraphernalia at Defendant's residence consistent with heroin distribution. Detective Rudolph testified that Dormin and Enfamil are substances used to process heroin. Detective Rudolph further testified that heroin is normally put on a plate with a cutting agent, chopped up with a razor, and "then put into [a] coffee grinder and processed for sale." Detective Rudolph stated that "digital scales are used by drug dealers to weigh their prod-

uct and ensure that they're not giving too little or too much away." The presence of all of these items at Defendant's residence along with the heroin indicates that Defendant intended to distribute the drug. *See, e.g., Salyer,* 884 S.W.2d at 357–58 (paraphernalia found with the drugs was evidence of the defendant's intent to distribute). Point denied.

**5. Prior and Persistent Drug Offender and Prior and Persistent Offender**

In Point V, Defendant contends that the trial court erred in finding him to be a prior and persistent "felony" offender and prior and persistent drug offender.[5] Specifically, Defendant contends that the trial court failed to hold a prior and persistent offender hearing outside the presence of the jury, never took judicial notice of Defendant's prior convictions, and never found prior to sentencing that Defendant was a prior and persistent "felony" offender or prior and persistent drug offender.

Defendant raises this issue for the first time on appeal. Because it is not preserved, we review this point on appeal for plain error only. *State v. Severe,* 307

**5.** On its sentence and judgment form, the trial court checked the boxes to sentence Defendant as a "prior offender" and "persistent offender" pursuant to Section 558.016 and a "prior drug offender" and "persistent drug offender" pursuant to Section 195.285.

Defendant claims that the court erred in finding him a "prior and persistent felony offender." However, Section 558.016 does not use the term "prior and persistent felony offender." Rather, Section 558.016 defines the separate terms "prior offender" and "persistent offender." Mo.Rev.Stat. § 558.016. Section 558.016 defines a "prior offender" as: "one who has pleaded guilty to or has been found guilty of one felony." § 558.016.2. Section 558.016 defines a "persistent offender" as: "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." § 558.016.3. When a defendant meets the criteria for both

designations, he is often referred to as a "prior and persistent offender" *See, e.g., State v. Gibbs,* 306 S.W.3d 178, 183 (Mo.App. E.D. 2010).

Section 195.275 defines the terms "[p]rior drug offender" and "[p]ersistent drug offender." Mo.Rev.Stat. § 195.275. A "[p]rior drug offender" is "one who has previously pleaded guilty to or has been found guilty of any felony offense ... relating to controlled substances." § 195.275.1(1). A "[p]ersistent drug offender" is "one who has previously pleaded guilty to or has been found guilty of two or more felony offenses ... relating to controlled substances." § 195.275.1(2). A defendant who meets the criteria to be both a "prior drug offender" and a "persistent drug offender" is often referred to as a "prior and persistent drug offender." *See, e.g., Robinson v. State,* 359 S.W.3d 568, 570 (Mo.App. E.D. 2012).

S.W.3d 640, 642 (Mo. banc 2010). Plain error is error which is "evident, obvious, and clear." *State v. Johnson*, 150 S.W.3d 132, 136 (Mo.App. E.D.2004). We will not reverse for plain error unless the trial court's error resulted in a "manifest justice or a miscarriage of justice." *Severe*, 307 S.W.3d at 642.

Section 558.021 establishes the procedure required for determining whether a defendant is a prior and persistent offender *and* for determining whether a defendant is a prior and persistent drug offender. *See* Mo.Rev.Stat. §§ 195.275; 558.021. In *State v. Johnson*, 150 S.W.3d 132 (Mo.App. E.D.2004), we described the required procedure as follows:

> The trial court shall find a defendant to be a prior and persistent offender if: 1) the State pleads in the indictment or information, original or amended, or in the information in lieu of indictment, all essential facts warranting a finding that the defendant is a prior and persistent offender; 2) the State introduces sufficient evidence to warrant a finding that the defendant is a prior and persistent offender; and 3) the trial court finds beyond a reasonable doubt that the defendant is a prior and persistent offender.

*Id.* at 136 (*citing* Section 558.021.1; *State v. Stephens*, 88 S.W.3d 876, 886 (Mo.App. W.D.2002)).

The State charged Defendant as a prior and persistent drug offender pursuant to Section 195.275 and 195.285. The record reveals that the State asked the trial court if it could "prove [Defendant] up as a prior and persistent drug offender." The trial court conducted a hearing outside the presence of the jury, took judicial notice of Defendant's prior drug convictions, and found prior to sentencing that Defendant was a prior and persistent drug offender beyond a reasonable doubt.

More specifically, outside the presence of the jury, the trial court asked the prosecutor: "Mr. Ernst, you have some prior convictions you'd like to prove up at this point?" The prosecutor answered: "Yes, your honor. I'd like to prove the defendant up as a prior and persistent drug offender." The prosecutor then read into the record Defendant's four prior felony drug convictions and asked the court "to take judicial notice of each and every one of those files and to find the defendant to be a prior and persistent drug offender." Defense counsel did not object to the court taking judicial notice of the files. After brief argument, the court stated:

> THE COURT: Court will take judicial notice of the four files. Make the following finding: Outside the hearing of the jury evidence was adduced and after argument the issue was submitted to the Court. The court finds beyond a reasonable doubt that on August 6th, 2009, defendant appeared with his attorney in the Circuit Court of the City of St. Louis, State of Missouri, in Cause No. 0822–CR06024, and after plea was found guilty of the offense of illegal possession of a controlled substance, heroin.

> The Court further finds beyond a reasonable doubt that on October 8, 1992, in Cause No. 22921–00986, defendant appeared with his attorney in the Circuit Court of the City of St. Louis, State of Missouri, and was found guilty of the offense of illegal possession of a controlled substance, cocaine.

> [THE PROSECUTOR]: Judge, which one was that?

> THE COURT: It was 921–0986. Court further finds beyond a reasonable doubt that on June 19, 1989, in Cause No. 22881–002325, defendant appeared with his attorney in the Circuit Court of the City of St. Louis, State of Missouri, and

after plea was found guilty of the offense of illegal possession of a controlled substance, cocaine.

And in Cause No. 22861–000418 defendant appeared with his attorney in the Circuit Court of the City of St. Louis and after plea was found guilty of illegal possession of a controlled substance, phencyclidine.

All of said felonies and all of said causes being felonies related to controlled substances, the Court finds beyond a reasonable doubt that defendant is a prior persistent drug offender under Section 195.275 and 195.285 and it's therefore ordered defendant should be sentenced pursuant to 557.036 and Section 195.275 and 195.285 as a prior and persistent drug offender. Anything else, Mr. Ernst?

[THE PROSECUTOR]: Not at this time, Judge.

THE COURT: Miss Gau, anything else? Ramona?

[DEFENSE COUNSEL]: No, Your Honor.

Based upon the record, it is clear that the trial court complied with the applicable procedure for adjudicating Defendant to be a prior and persistent drug offender.

 The State also charged Movant as a prior and persistent offender pursuant to Sections 557.036 and 558.016. However, the record establishes that the prosecutor did not ask the court to adjudicate defendant as a prior and persistent offender and the trial court did not explicitly find that Defendant was a prior and persistent offender.[6] Thus, to the extent

that the sentence and judgment form reflects that Defendant was found to be a prior and persistent offender pursuant to Section 558.016, it is in error. "A mistake in a judgment and sentence form regarding the marking of boxes designated for memorializing a finding of a defendant's prior and persistent offender status is considered a clerical mistake." *State v. Page*, 309 S.W.3d 368, 374 (Mo.App. E.D.2010). Such an error may be corrected *nunc pro tunc*. *See, e.g., State v. Anthony*, 857 S.W.2d 861, 868–69 (Mo.App. W.D.1993).

Therefore, Defendant's conviction on all counts is affirmed, but we remand the case with directions that the trial court issue an order *nunc pro tunc* correcting the judgment to remove all references to Defendant's status as a prior and persistent offender pursuant to Section 558.016. Point granted.

*Conclusion*

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.

---

**6.** A finding that a Defendant is a prior and persistent drug offender does not automatically entail a finding that a Defendant is a persistent offender under Section 558.016 because of the possibility that multiple drug felonies may be committed at the same time. *See, e.g., State v. Anthony*, 857 S.W.2d 861, 868–69

(Mo.App. W.D.1993). Although a finding that Defendant is a prior and persistent drugs offender would imply that Defendant is at least a prior offender pursuant to Section 558.016, we decline to make such a finding when the State made no attempt to prove the matter and the trial court did not address it.