

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FIVE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED100941 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1322-CR00844-01 |
| | ) | |
| GLENN VALENTINE, | ) | Honorable Dennis M. Schaumann |
| | ) | |
| Respondent. | ) | Filed: May 13, 2014 |

## Introduction

This is an interlocutory appeal in which the State of Missouri (State) appeals the trial court's order granting Respondent Glenn Valentine's (Defendant) motion to suppress evidence seized pursuant to a search warrant. The State argues that the trial court erred in determining that the probable cause supporting the search warrant was stale; and that regardless, the exception to the exclusionary rule applies here because the officers acted in good faith in executing the search warrant. We reverse.

## Background

The State charged Defendant as a prior drug offender and prior and persistent offender with two counts of the class C felony of possession of a controlled substance, and one count of the class A misdemeanor of possession of drug paraphernalia with intent

to use. These charges came about after the police executed a search warrant at 3050 Thomas, where Defendant occasionally resided, and found heroin, cocaine base, and drug paraphernalia. Prior to trial on these charges, Defendant filed a motion to suppress all evidence obtained from the search of 3050 Thomas. He argued that the affidavits supporting the search warrant did not establish probable cause, that the affidavits contained material misstatements and omissions of material facts, and that the time between the officers' receipt of information and the date officers sought the search warrant rendered probable cause stale and attenuated. The trial court held a hearing on the motion to suppress and examined the affidavits supporting the search warrant.

One of those affidavits was submitted by Officer Joseph Hill, Jr. (Officer Hill) on January 28, 2013, and it contained the following information. Officer Hill attested that in December of 2012, he learned from a confidential source that a black male in his late 40's, known as "Nino," had been selling heroin and crack cocaine from the front porch of a residence at 3050 Thomas. Officer Hill attested that he and Officer William Gillen (Officer Gillen) then conducted surveillance of 3050 Thomas during the first two weeks of December of 2012. On December 4, 2012, the officers arrested and interviewed two subjects whom the officers observed purchasing narcotics at 3050 Thomas. Both subjects admitted purchasing heroin and crack cocaine from "Nino" at least two times per day. They described "Nino" as a black male in his late forties to early fifties, five feet and eight or nine inches tall, having a medium to dark complexion, a stocky build, and a mustache. Both subjects had seen "Nino" carrying a large caliber pistol when conducting transactions. One of the subjects stated that "Nino" also sold narcotics from his bedroom, and that "Nino" kept narcotics and money in a safe in his bedroom.

2

Officer Hill further attested that on December 6, 2012, he and Officer Gillen observed a hand-to-hand transaction on the front porch of 3050 Thomas. They approached the person who walked away from the house, later identified as Lamar Prete (Prete), and asked to talk with him. Officer Hill's affidavit states that Prete admitted knowing "Nino" at 3050 Thomas, and that Prete described "Nino" in a way that matched the previous descriptions given to the officers by other subjects. Prete told the officers that he purchases heroin and Percocet from "Nino" several times per day.

Officers Hill and Gillen then observed another drug transaction take place on the porch at 3050 Thomas on December 7, 2012. Officer Hill also attested that he ran a computer inquiry of 3050 Thomas that revealed that "Nino" was Glenn Valentine, the Defendant. This inquiry also detailed that Defendant had numerous prior arrests and convictions, was believed to be dangerous, and carried a pistol for his transactions.

Finally, Officer Hill attested that on or about January 11, 2013, a confidential source identified as Jane/John Doe (Doe) informed Officers Hill and Gillen that Doe knows "Nino" and purchases narcotics from him. Doe told the officers that "Nino" had been suspicious of police surveillance during the previous few weeks, but he was selling narcotics from 3050 Thomas again. Doe told the officers that Doe had purchased narcotics from "Nino" during the previous 72 hours.

Doe, with Officer Hill, also appeared before the judge who issued the search warrant, and Doe signed a separate affidavit in support of the search warrant. In Doe's affidavit, Doe attested that Doe had known "Nino" since April of 2012, and Doe described "Nino" to be a black male in his late forties, with a short haircut and a mustache. Doe attested that the nature of Doe's relationship with "Nino" is that of a

dealer and buyer of narcotics. Doe also attested that Doe had been at 3050 Thomas and had purchased heroin during the previous 72 hours. Doe's affidavit is dated January 28, 2013.

In addition to reviewing these two affidavits, the trial court heard testimony from Officer Hill at the hearing on the motion to suppress. Officer Hill confirmed the information contained in his affidavit. He stated that he did not have a copy of the computer inquiry he had performed regarding 3050 Thomas. He also stated that he did not recall Prete testifying in federal court that Prete had never told Officer Hill that he bought drugs from "Nino."[1] Officer Hill testified that he believed Doe was reliable because Doe was an informant for the Federal Bureau of Investigation (FBI). He also confirmed that Doe was present when Officer Hill applied for the search warrant, and that the issuing judge took sworn affidavits from both Officer Hill and Doe at that time.

The trial court considered all of this evidence and granted Defendant's motion to suppress, finding that the probable cause supporting the search warrant was stale. The trial court made no credibility findings, nor any findings regarding the veracity of the affidavits in support of the search warrant. This appeal follows.

## Standard of Review

We reverse a trial court's ruling on a motion to dismiss only where it is clearly erroneous. State v. Milliorn, 794 S.W.2d 181, 183 (Mo. banc 1990). We give deference to the trial court's assessment of witness credibility; however, we review legal questions, such as whether the Fourth Amendment has been violated, *de novo*. State v. Irvin, 210

---

[1] Defendant's counsel submitted a transcript from a federal supervised release hearing in which Prete denied ever informing Officer Hill that he had purchased drugs from "Nino." After the hearing, the U.S. District Court revoked Defendant's supervised release and sentenced him to twenty-four months' imprisonment.

S.W.3d 360, 362 (Mo. App. W.D. 2006) (reviewing trial court's grant of motion to suppress). Here, the trial court's basis for suppressing the evidence was independent of any credibility determination. See id. at 363 n.3.

The Fourth Amendment to the United States Constitution guarantees that no warrant shall issue except upon probable cause supported by oath or affirmation. State v. Neher, 213 S.W.3d 44, 48-49 (Mo. banc 2007). "In determining whether probable cause exists, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 49 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)) (internal quotations omitted).

Our task on review "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." State v. Taylor, 373 S.W.3d 513, 522 (Mo. App. E.D. 2012) (quoting Gates, 462 U.S. at 238-39) (internal alterations omitted). "In so doing, we may not look beyond the four corners of the warrant application and the supporting affidavits." Id. (quoting Neher, 213 S.W.3d at 49). Because the existence of probable cause is a question of fact, we "give great deference on review to the initial judicial determination of probable cause made at the time of the issuance of the warrant and we reverse only if that determination is clearly erroneous." State v. Berry, 801 S.W.2d 64, 66 (Mo. banc 1990) (interlocutory appeal of trial court's grant of defendant's motion to suppress). "Even cases where the sufficiency of the affidavit is marginal should be largely determined by the preference to be accorded to warrants." State v. Williams, 9 S.W.3d 3, 17 (Mo. App. W.D. 1999) (quoting State v. Hill, 854 S.W.2d 814, 819 (Mo. App. S.D. 1993)).

5

## Discussion

The State's argument on appeal is two-fold. First, the State argues that the trial court erred in granting Defendant's motion to suppress because the affidavits of Officer Hill and Doe established probable cause. Second, the State argues that even if probable cause was lacking, suppression is not an appropriate remedy under the good faith exception to the exclusionary rule, because the officers acted in good faith in executing the search warrant. We find the first argument dispositive.

## Probable Cause

The State argues that the trial court erred in granting Defendant's motion to suppress because there was sufficient probable cause for the search warrant. We agree.

Here, the trial court found that the probable cause attested to in the affidavits became stale by the passage of time. Specifically, 17 days had passed between the date Officer Hill attested he received information from Doe and the date that Officer Hill applied for the warrant.[2]

The requirement of probable cause includes an element of timeliness; specifically, that the facts presented to the issuing judge are sufficient to justify a conclusion that the items sought are probably on the premises searched at the time the warrant issues. State v. Wilbers, 347 S.W.3d 552, 558 (Mo. App. W.D. 2011) (citing U.S. v. Greany, 929 F.2d

---

[2] The trial court did not state specifically what period of time it found had passed. While Doe's affidavit, dated January 28, 2013, states that Doe had purchased narcotics from "Nino" during the preceding 72 hours, Officer Hill attested in his affidavit that Doe made this same statement to him on January 11, 2013. The trial court appeared to assume that the last piece of information supporting the warrant was Doe's statement to Officer Hill on January 11, 2013, as the court put a question to the State to confirm that Officer Hill had all the information supporting the warrant by January 11, 2012, and the State answered, "2013, Your Honor." While the State asserted in its brief and at oral argument that Doe's affidavit makes clear that Doe had purchased narcotics from "Nino" within the 72 hours preceding January 28, 2013, the State did not directly make that argument to the trial court that the information supporting the search warrant was at most 72 hours old. Therefore, we assume the trial court's decision was based on a 17-day time lapse and review it as such.

523, 524-25 (9th Cir. 1991)). "The police . . . will encounter problems of 'staleness' of their information if they delay too long in seeking a search warrant." Id. at 560 (quoting U. S. v. Watson, 423 U.S. 411, 450 n.14 (1976)). At the same time, there is no bright-line test for determining staleness: "time factors must be examined in the context of a specific case and the nature of the crime under investigation." Id. (quoting U. S. v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007)).

Here, the investigation of Defendant regarding drug sales continued for over a month, between at least December 4, 2012 and January 11, 2013. All of the sources who gave information to the officers about "Nino" had indicated they had bought drugs from "Nino" multiple times. One subject told the officers that "Nino" kept drugs in a safe in his bedroom and sold drugs from there. Additionally, Doe attested in January of 2013 that Doe had had a relationship with "Nino" for approximately nine months, since April of 2012, and that the nature of their relationship was of a dealer and buyer of narcotics.

While cases involving drugs often find probable cause stale within a few days due to the nature of the contraband as consumable, see State v. Pattie, 42 S.W.3d 825, 828 (Mo. App. E.D. 2001) (noting drugs are not kept for long periods of time, but likely to be quickly consumed or distributed for sale); courts considering cases involving ongoing drug operations have found a likelihood that evidence will remain present for much longer due to the ongoing nature of the crime. See, e.g., U.S. v. Jeanetta, 533 F.3d 651, 655 (8th Cir. 2008) (stating "where continuing criminal activity is suspected, the passage of time is less significant"); State v. Keller, 870 S.W.2d 255, 259 (Mo. App. W.D. 1994) (quoting Davidson v. State, 458 A.2d 875, 880 (Md. App. 1983)) ("the business of dealing in illegal drugs is ordinarily a regenerating activity"); see also State v. Williams,

7

9 S.W.3d 3, 16 (Mo. App. W.D. 1999) (noting evidence of continued illicit drug activity throughout preceding year, though not sufficient in and of itself to establish probable cause, was not too stale to be considered with other relevant circumstances alleged). "In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale." Jeanetta, 533 F.3d at 655 (finding two-week time period between controlled buy of narcotics and warrant application did not render probable cause stale).

Here, Doe described an ongoing relationship regarding narcotics sales, and the issuing court authorized a search for evidence related to ongoing narcotics sales. Specifically, the warrant issued stated that probable cause existed to believe the following was present at 3050 Thomas: "Heroin, a Schedule I Controlled Substance, Cocaine Base, a Schedule II Controlled Substance, and any packaging materials, U.S. currency[,] weighing devices believed to be obtained for narcotic sales[, and] a locked safe containing narcotics." Given these circumstances, as well as the deference owed to the court that issued the search warrant, we find the trial court clearly erred in concluding that the probable cause supporting the search warrant was stale. Thus, we reverse the order of the trial court suppressing evidence obtained pursuant to this search warrant.

Defendant argues that there were other bases to support invalidating the search warrant for lack of probable cause; namely, that Doe's reliability was never established. The trial court here made no credibility findings, but decided rather as a matter of law based on the timeline contained in the affidavits that the probable cause was stale. There is no indication by the trial court that it considered Doe's affidavit, or Officer Hill's recitation of Doe's statements, unreliable. Nevertheless, we note that Officer Hill's

8

action in bringing Doe with him to apply for the search warrant bolstered Doe's reliability. "[W]here the informant *directly serves as the affiant* for a search warrant, thereby running the risk of a perjury prosecution, it may be fairly concluded that the information given by the informant under oath is reliable." State v. Henry, 292 S.W.3d 358, 365 (Mo. App. W.D. 2009) (quoting State v. Weide, 812 S.W.2d 866, 871 (Mo. App. W.D. 1991)).

## Good Faith

Finally, the State argues that even if the warrant was not sufficiently supported by probable cause; because the officers executed the warrant in good faith, suppression of the evidence is an improper remedy. See U.S. v. Leon, 468 U.S. 897, 922 (1984) (establishing exception to exclusionary rule where evidence was obtained in objectively reasonable reliance on a subsequently invalidated search warrant). Because we find that the trial court clearly erred in determining probable cause was stale, we need not address this argument. However, we note that to show a lack of good faith, a warrant issued by a neutral magistrate that is found to be based on insufficient probable cause must be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," U.S. v. Perry, 531 F.3d 662, 667 (8th Cir. 2008), and such was not the case here.

## Conclusion

The trial court clearly erred in finding that the probable cause was stale due to the passage of 17 days under the circumstances, which included Officer Hill's information gathered from several sources over a month-long period that Defendant repeatedly sold drugs to the same subjects, as well as Doe's statements that he had a relationship as a

narcotics buyer with Defendant over a period of several months. Thus, the issuing judge had a substantial basis for finding probable cause to support the warrant, and the warrant should be given deference. We reverse the trial court's order granting Defendant's motion to suppress evidence found pursuant to the search warrant, and we remand for further proceedings consistent with this opinion.

_____
Gary M. Gaertner, Jr., Judge

Robert M. Clayton III, C. J., concurs.
Mike Greenwell, S. J., concurs.