Joseph M. Ellis, Judge,
concurring.
While I agree that the trial court’s decision must be reversed, I write separately because I believe the case must be analyzed and decided within the context of the United States Supreme Court’s decision in Franks v. Delaware, 488 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
In his Affidavii/Application for Search Warrant, Detective Benson swore that:
On 07-28-2009, at approximately 1710 hours, a detective with the Kansas City Missouri Police Department, Street Crimes Unit and a confidential informant responded to a residence at 1228A E. 4th Street, Kansas City, Jackson County, Missouri regarding an on-going narcotics investigation. Prior to arrival, the confidential informant contacted the suspect by phone. The confidential informant arranged to meet the suspect at his residence in order to purchase fifty dollars worth of Cocaine Base.
Upon arrival, the detective parked directly in front of the multi-unit structure and handed the confidential informant fifty dollars of the pre-recorded Street Crimes Unit buy money. The confidential informant exited the detective’s undercover vehicle and met with the suspect in front of the apartment building. The informant followed the suspect into the building through the center common door located at the south side of the structure, the confidential informant ascended the stairs to the second floor, then both the confidential informant and suspect entered the west facing door on the east side of the building. Once inside, the confidential informant handed the suspect fifty dollars of pre-recorded Street Crimes Unit buy money. The suspect accepted the buy money and retrieved several individually packaged beige rock-like substances, purported to be Cocaine Base, from the interior door frame to the apartment’s balcony. The suspect handed the confidential informant two of the individually packaged substances in exchange for the buy money. While inside the apartment, the suspect displayed a .22 cal. handgun to the informant. After a brief conversation, the confidential informant left the apartment building and returned to the detective’s undercover vehicle. The confidential informant immediately handed the detective the purchased substances before they drove from the area.
The confidential informant, who has been proven reliable, was searched prior to and after the narcotics transaction for weapons, narcotics, and currency with negative results. During the narcotics investigation the confidential informant was kept under constant surveillance and electronically monitored.
The detective field-tested the purported Cocaine Base, which weighed approximately 0.7 grams, utilizing the Scott Reagent System test kit. The substance tested positive to the presence of Cocaine. The purchased substance was packaged, sealed, signed, dated and placed in the unit safe to be forwarded to the Regional Crime Lab for further analysis.
Detective Benson’s affidavit is stated as though he had first-hand knowledge of the facts asserted therein. since none of the information asserted therein is attributed to any other source and he swears that the *362 informant was “kept under constant surveillance and electronically monitored.” His statements are made as though he were part of a surveillance team that witnessed the drug buy using binoculars and a listening device.
Were we simply determining whether the issuing judge or magistrate had a substantial basis for concluding that probable cause existed, which is ordinarily the scope of our review, our analysis would have to be limited to the four corners of the Affidavit/Application for Search Warrant executed by Detective Benson. State v. Valentine, 430 S.W.3d 339, 343 (Mo.App.E.D. 2014).[1] And on the face of that document, if Detective Benson had first-hand knowledge of the matters sworn to therein and observed the money and drugs exchange hands, there was clearly more than a sufficient basis for the issuing judge or magistrate to have found probable cause to support the issuance of a search warrant.[2] But there is much more to the story.
In his motion to suppress, Fowler did not assert that the facts set forth in the affidavit were insufficient to support a finding of probable cause. The basis for the Fowler’s motion was, rather, that some of the facts asserted in the affidavit were actually based upon hearsay rather than firsthand observation. In making that assertion, Fowler relied upon deposition testimony taken from Detective Benson, which was attached as an exhibit to the motion. Fowler argued that, when the hearsay nature of the information contained in the affidavit is considered, the affidavit is insufficient to support a finding of probable cause.
The trial court conducted a hearing on the Defendant’s motion and accepted into evidence the deposition testimony of Detective Benson. Detective Benson’s deposition testimony reflects that he had abso-, lutely no direct knowledge of any of the facts asserted in his affidavit. In fact, he stated that he simply signed the warrant affidavit, which had been prepared by the undercover officer,[3] without having had any other contact with the undercover officer or any contact whatsoever with the confidential informant. He said that he did nothing to verify any of the facts asserted in the affidavit prepared by the undercover officer before signing it and presenting it to the judge.
Furthermore, the State concedes that the undercover officer, likewise, did not personally observe any of the activity referenced in the affidavit that occurred while the informant and, Fowler were inside the apartment building.[4] It acknowledges that *363 all of the asserted “facts” related to what occurred inside the apartment were actually based upon what the informant told the undercover detective had occurred after returning to the car, rather than from the surveillance and electronic monitoring of the informant. Accordingly, the undercover officer also failed to properly attribute the hearsay nature of his information.
Thus, the record clearly reflects that many of the “facts” ultimately asserted and sworn to in Detective Benson’s affidavit were actually based upon second-hand hearsay statements from the unidentified confidential informant to the unidentified undercover officer. The affidavit, however, wholly fails to identify this information as double-hearsay, and thereby deprived the issuing judge of the opportunity to evaluate the application in that light.
Those facts notwithstanding, however, the only way in which the foregoing information regarding the hearsay nature of the facts asserted in the affidavit could be properly considered by the trial court in addressing the motion to suppress, would be in the context of a Franks challenge. As noted supra, ordinarily, in considering whether probable cause existed to support the issuance of a search warrant, a reviewing court may not look beyond the four corners of the warrant application and the supporting affidavits. State v. Neher, 213 S.W.3d 44, 49 (Mo. banc 2007).
“Franks established a limited way for a defendant to challenge the truthfulness of the statements asserted in the application for warrant by showing that the statements were deliberately false or made with reckless indifference to the truth.” State v. Brown, 382 S.W.3d 147, 167 (Mo.App.W.D.2012) (emphasis omitted). “The Court believed that the requirement for a warrant that there be ‘probable cause, supported by oath or affirmation,’ would be ‘reduced to a nullity’ if a police officer were able to use ‘deliberately falsified allegations’ to demonstrate probable cause, and, ‘having. misled the magistrate, then was able to remain confident that the ploy was worthwhile.’” Id. (quoting Franks, 438 U.S. at 168, 98 S.Ct. at 2682). In Franks, the United States Supreme Court held that:
[Wjhere the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant’s request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit’s false material set to one side, the affidavit’s remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
Franks, 438 U.S. at 155-56, 98 S.Ct. at 2676.
Franks established a procedure requiring a defendant to plead specifically any alleged Franks violation and make an offer of proof. To make a Franks claim:
There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They *364 should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.
Franks, 438 U.S. at 171, 98 S.Ct. 2674. “When a defendant has made a proper pleading and offer as required by Franks, the defendant is entitled to a hearing to demonstrate the contentions asserted.” Brown, 382 S.W.3d at 167.
In the case at bar, in bringing his motion to suppress, Fowler did not specifically allege that the misleading or false aspects of the warrant affidavit were the result of deliberate falsehood or a reckless disregard for the truth on the part of the police, and he made no reference to Franks. But even if we assume, arguen-do, that Fowler implicitly raised a Franks claim and that the evidence presented at the hearing established that the police deliberately or recklessly failed to attribute the hearsay information contained in the affidavit,[5] we would still have to conclude that the search warrant was valid and that the trial court erred in suppressing the evidence.
Under Franks, even where statements in the application for warrant are shown to be deliberately false or made with reckless disregard for the truth, in order for the fruits of the search to require suppression, the sufficiency of the warrant application must be assessed with the falsehoods removed. “The effect of finding a Franks violation is that when the trial court determines there has been ‘deliberate falsehood or [ ] reckless disregard for the truth’ by the affiant, the trial court must set aside the false material and consider only the affidavit’s remaining contents in determining whether probable cause existed at the time the warrant was issued.” Id. (quoting Franks, 438 U.S. at 155-56, 98 S.Ct. at 2676). If the content of the warrant application with the falsehoods removed is still sufficient to establish probable cause, the warrant will not be voided, and the fruits of the warrant will not be suppressed.
Here, had the officers properly attributed the hearsay contained in the affidavit, the affidavit would still have contained sufficient facts to establish probable cause. Where the information conveyed was witnessed by a police officer and conveyed to the attesting officer, “courts have consistently held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as a part of the probable cause determination.” State v. Baker, 103 S.W.3d 711, 720-21 (Mo. banc 2003) (internal quotation omitted). Accordingly, attribution of the information having been provided to Detective Benson by the undercover officer is of little import under the circumstances of this case.
If the information regarding what occurred inside the apartment were properly *365 attributed to the unidentified, confidential informant, we would be left with the following. The confidential informant, in the presence of an unidentified undercover officer, called Fowler on the telephone and arranged to meet him at 1228A E. 4th St. to purchase cocaine base. Prior to arriving at that address, the informant was searched for weapons, narcotics, and currency, and he was given fifty dollars in pre-recorded buy money. After the officer and the informant arrived at Fowler’s apartment building, the officer saw the informant meet Fowler outside of the building and then enter the building with him. Shortly thereafter, the informant left the building, returned to the officer’s vehicle, and handed the officer what appeared to be two small packages of cocaine base. The informant was again searched and did not have any other money, weapons, or narcotics on him.
The informant told the officer that he had gone to Fowler’s second story apartment with him. The informant said that he had handed the buy money to Fowler and that Fowler had then retrieved several individually packaged beige rock-like substances from the interior door frame of the apartment’s balcony door and given the informant the two packages that Fowler had turned over to the officer upon returning to the ear. The informant further noted that Fowler had displayed a .22 caliber handgun at some point. The substance in the packages was field tested by the officer and tested positive for the presence of cocaine.
“An affidavit that relies on hearsay is sufficient to support a finding of probable cause if there is a substantial basis for crediting the hearsay.” Taylor, 373 S.W.3d at 523 (internal quotation omitted). “The issuing court could credit the hearsay in the affidavit because the confidential informant personally observed [the defendant] with drugs and firearms inside the residence.” Id. Furthermore, there was ample corroboration of the informant’s statements to the officer. The officer witnessed the informant making the telephone call to Fowler and saw Fowler meet with the informant outside the. apartment building at the designated time. In addition, he witnessed the informant leave the car with the buy money, enter Fowler’s apartment building with him, and return a short time later with a substance that tested positive for cocaine. These observations together provide more than sufficient corroboration for the informant’s statements to be accepted as reliable.
In short, under the totality of the circumstances, there was a substantial basis for concluding there was a fair probability that contraband and evidence of criminal activity would be found at Fowler’s residence. Thus, the trial court erred in ruling otherwise.
Nevertheless, this case shines a spotlight on the apparent prevalence of law enforcement’s failure to prepare warrant applications in a manner so that the judge can properly perform the judicial function and duty of evaluating whether, under the totality of the circumstances, the warrant should issue. Clearly, the concealment of the hearsay nature of facts set forth by the police in a warrant application and/pr supporting affidavit might well warrant suppression in a case where a Franks claim has been properly asserted and proven. “Omissions as well as affirmative misstatements can support a conclusion the officer knowingly or recklessly misled the magistrate judge.” United States v. Comer, 565 Fed.Appx. 729, 732 (10th Cir.2014). In assessing whether probable cause exists to support the issuance of a search warrant, a judge or magistrate is required to evaluate “whether, given all the circumstances ..., including the ‘veracity’ and ‘basis of knowl *366 edge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). “If an informant’s tip is the source of information, the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant evidence might be discovered, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, ... was ‘credible’ or his information ‘reliable.’ ” Franks, 438 U.S. at 165, 98 S.Ct. at 2681 (internal quotation omitted). A judge or magistrate cannot make a proper determination of probable cause where the affiant utterly fails to mention that an informant was the source of the facts asserted. State v. Trenter, 85 S.W.3d 662, 676 (Mo.App.W.D.2002). “The issuing judge cannot accurately determine probable cause from the totality of the circumstances if he or she has no idea what the circumstances are. Without knowing that the information was provided by a confidential infor-' mant, the issuing judge cannot consider the totality of the circumstances as required by Gates." State v. Trenter, 85 5.W.3d 662, 676 (Mo.App.W.D.2002).
Based on the existing case law and common sense, law enforcement officers must be deemed to be aware that judges, in deciding whether sufficient probable cause exists to justify the issuance of a search warrant, are required to assess the veracity and basis of knowledge of informants providing hearsay information. Armed with such knowledge, it is reckless for a law enforcement officer to omit from an affidavit the fact that information sworn to therein is based upon hearsay and to instead state such information in a manner that implies firsthand knowledge.[6] Absent identification of the information as hearsay, the judge or magistrate is not placed on notice of the need to assess the credibility of the informant and/or any independent corroboration of the hearsay statements.
In this case, the record indicates a recurrent practice of having administrative detectives sign affidavits that are prepared by undercover officers without providing any attribution to indicate the hearsay nature of those sworn statements. Knowing that the hearsay nature of evidence is an important consideration for the courts, it is certainly reckless for those administrative officers to fail to provide proper attribution for their sworn statements. It would be exceedingly simple for these administrative detectives to simply add a statement at the beginning of their affidavit like, “The following was reported to me by an undercover detective: ...,” and thereby avoid falsely implying that the administrative detective is speaking from firsthand knowledge. As a practical matter, providing such attribution is ordinarily unlikely to affect a judge or magistrate’s ultimate probable cause determination where the information conveyed was witnessed by the undercover detective as “courts have consistently held that another law enforcement officer is a reliable source and. that consequently no special showing of reliability need be made as a part of the probable cause determination.” Baker, 103 S.W.3d at 720-21 (internal quotation omitted). Such attribution is important, however, where the affidavit contains second and third-hand hearsay to allow the judge or magistrate to properly assess the reliability of the information provided. Knowledge of which officer is vouching for *367 the credibility of a witness or how many times removed hearsay information is from the affiant can certainly impact upon the probative value of the information provided.
For all these reasons, I would strongly encourage all law enforcement agencies to instruct officers regarding the attribution of hearsay in warrant affidavits, especially with regard to distinguishing between what was actually observed by an officer and what was instead conveyed to the officer through statements made by a witness or informant. Under the right circumstances, the failure to properly identify and attribute such hearsay could result in the suppression of evidence in future cases.

. See also State v. Taylor, 373 S.W.3d 513, 522 (Mo.App.E.D.2012) ("On review, our task is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, we may not look beyond the four comers of the warrant application and the supporting affidavits.”) (internal quotation and citation omitted)

. The majority opines that statements made in the affidavit are sufficient to support an inference that the various factual assertions made therein were based upon hearsay rather than firsthand knowledge. Under our standard of review, statements in the affidavit must be viewed in the light most favorable to the issuing court’s finding of probable cause. It would seem that drawing the inference suggested by the majority would be inconsistent with that standard of review.

. Detective Benson’s deposition testimony reflects that the warrant application was prepared by and given to him by the undercover officer. Benson testified that he merely checked it for grammatical errors and to make sure the legal description of the property was correct before signing it, taking it to the prosecutor for a signature, and presenting it to the judge.

. This concession is made for the first time on appeal. During the evidentiary hearing, the State argued that the affidavit reflects that the *363 informant was under "constant surveillance by [the undercover detective] during the course of the buy.”

. Clearly, in conducting the evidentiary hearing on the motion, the trial court and the parties treated the motion to suppress as though a Franks claim was properly raised. Fowler presented evidence to support his motion, and the trial court accepted and considered that evidence. Unless a Franks claim were made, the trial court’s review would have been limited to the four comers of the application/affidavit, and no evidence could have been considered. State v. Taylor, 373 S.W.3d 513, 522 (Mo.App.E.D.2012) (“On review, our task is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, we may not look beyond the four comers of the warrant application and the supporting affidavits.”) (internal quotation and citation omitted)

. "[RJecklessness may be inferred when the information was ‘clearly critical’ to a finding of probable cause.” United States v. Comer, 565 Fed.Appx. 729, 732 n.2 (10th Cir.2014).