

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD77167 |
| | ) | |
| LLOYD E. FOWLER, | ) | FILED: May 12, 2015 |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County**
**The Honorable Kathleen A. Forsyth, Judge**

**Before Division Four: Alok Ahuja, C.J., and Joseph M. Ellis and James E. Welsh, JJ.**

Respondent Lloyd Fowler was charged with possession of a controlled substance following the execution of a search warrant at his Kansas City residence. Fowler filed a motion to suppress the evidence derived from the search, arguing that the information in the warrant application was insufficient to establish probable cause to believe that evidence of criminal activity would be discovered during a search. The circuit court granted Fowler's motion to suppress, and the State filed this interlocutory appeal pursuant to § 547.200.1, RSMo. We reverse.

## Factual Background

On July 30, 2009, Detective Eric Benson of the Kansas City Missouri Police Department applied for a search warrant for Fowler's residence. The relevant portion of the warrant application states:

On 07-28-2009, at approximately 1710 hours, a detective with the Kansas City Missouri Police Department, Street Crimes Unit and a confidential informant

responded to a residence at 1228A E. 4th Street, Kansas City, Jackson County, Missouri regarding an on-going narcotics investigation. The confidential informant knew a male, previously identified as Mr. Lloyd E. Fowler, Black/Male, 10-21-1965, lived in the building and sold purported Cocaine Base from his apartment. Mr. Fowler will now be referred to as the suspect.

Prior to arrival, the confidential informant contacted the suspect by phone. The confidential informant arranged to meet the suspect at his residence in order to purchase fifty dollars worth of Cocaine Base.

Upon arrival, the detective parked directly in front of the multi-unit structure and handed the confidential informant fifty dollars of pre-recorded Street Crimes Unit buy money. The confidential informant exited the detective's undercover vehicle and met with the suspect in front of the apartment building. The informant followed the suspect into the building through the center common door located on the south side of the structure, the confidential informant ascended the stairs to the second floor, then both the confidential informant and suspect entered the west facing door on the east side of the building. Once inside, the confidential informant handed the suspect fifty dollars of pre-recorded Street Crimes Unit buy money. The suspect accepted the buy money and retrieved several individually packaged beige rock-like substances, purported to be Cocaine Base, from above the interior door frame to the apartment's balcony. The suspect handed the confidential informant two of the individually packaged substances in exchange for the buy money. While inside the apartment, the suspect displayed a .22 cal. handgun to the informant. After a brief conversation, the confidential informant left the apartment building and returned to the detective's undercover vehicle. The confidential informant immediately handed the detective the purchased substances before they drove from the area.

The confidential informant, who has been proven reliable, was searched prior to and after the narcotics transaction for weapons, narcotics, and currency with negative results. During the narcotics investigation the confidential informant was kept under constant surveillance and electronically monitored.

The detective field-tested the purported Cocaine Base, which weighed approximately 0.7 grams, utilizing the Scott Reagent System test kit. The substance tested positive to the presence of Cocaine. The purchased substance was packaged, sealed, signed, dated and placed in the unit safe to be forwarded to the Regional Crime Lab for further analysis.

The warrant application requested authorization for a "no-knock" entry, based on Fowler's criminal history, the fact that drug dealers are commonly armed, and the ease of disposing of illegal drugs.

Although the search warrant application was attested by Detective Benson, he acknowledged during a deposition that he was acting merely as an "Administrative Detective" responsible for submitting the warrant application, but that he had no direct involvement in the underlying narcotics investigation, and no personal knowledge of the information stated in the warrant application. Instead, the information contained within the warrant application was provided to Detective Benson by the detective who actually conducted the investigation.

The search warrant was issued by an associate circuit court judge on July 30, and was executed at Fowler's residence on August 5, 2009. During the execution of the search warrant, police found approximately 0.8 grams of purported cocaine base.

Fowler was charged with one count of possession of a controlled substance, a Class C felony. He filed a motion to suppress the evidence found during the execution of the search warrant. The motion argued that the warrant application was based upon multiple levels of hearsay information, but that the application provided the warrant-issuing judge with no basis to determine whether that hearsay was reliable. Fowler also argued that the warrant application was so lacking in indicia of probable cause that no reasonable law enforcement officer could have relied on the resulting warrant in good faith. The circuit court conducted a suppression hearing at which the search warrant application and a deposition of Detective Benson were admitted into evidence. Following the hearing, the circuit court granted Fowler's motion to suppress, finding that the warrant application was insufficient to establish probable cause and that the good-faith exception to the exclusionary rule was inapplicable under the circumstances. The State then filed this interlocutory appeal.

**Analysis**

"The Fourth Amendment to the United States Constitution guarantees that no warrant shall issue except upon probable cause supported by oath or affirmation." *State v. Henry*, 292

3

S.W.3d 358, 363 (Mo. App. W.D. 2009) (quoting *State v. Neher*, 213 S.W.3d 44, 48-49 (Mo.

banc 2007)).[1]

A reviewing court should "give great deference to the initial judicial determination of

probable cause that was made at the time the warrant issued." *State v. Brown*, 382 S.W.3d 147,

156 (Mo. App. W.D. 2012) (quoting *Neher*, 213 S.W.3d at 49) (internal quotation marks

omitted).

> In determining whether probable cause exists, the issuing magistrate or judge
> must "make a practical, common-sense decision whether, given all the
> circumstances set forth in the affidavit before him . . . there is a fair probability
> that contraband or evidence of a crime will be found in a particular place."

*Brown*, 382 S.W.3d at 161 (quoting *Neher,* 213 S.W.3d at 49); *see also Illinois v. Gates,* 462

U.S. 213, 238 (1983).  The decision of the issuing judge will be upheld unless that decision is

clearly erroneous.  *Brown*, 382 S.W.3d. at 156; *Neher*, 213 S.W.3d at 49.  "'Even when the

sufficiency of an affidavit is marginal, our determination should be informed by the preference

accorded to warrants.'" *State v. Wilbers*, 347 S.W.3d 552, 557 (Mo. App. W.D. 2011) (quoting

*State v. Trenter*, 85 S.W.3d 662, 667 (Mo. App. W.D. 2002)).

Despite the deference we afford to an issuing judge's decision to issue a search warrant,

"[t]he ultimate issue of whether the Fourth Amendment was violated is a question of law . . .

which this court reviews *de novo*." *State v. Ramires,* 152 S.W.3d 385, 391 (Mo. App. W.D.

2004).

Fowler's primary contention is that the affidavit supporting the search warrant is

insufficient to support a finding of probable cause because it contains multiple levels of hearsay,

each of which lacks the necessary indicia of reliability.  Thus, Fowler emphasizes that Detective

---

[1]        The "search and seizure" provision in Article I, Section 15 of the Missouri Constitution "is interpreted consistently with the Fourth Amendment of the U.S. Constitution." *State v. Wilbers*, 347 S.W.3d 552, 556 n.3 (Mo. App. W.D. 2011).

4

Benson, who signed the affidavit, had no first-hand knowledge of the events described. Instead, another (unidentified) detective provided Detective Benson with the underlying information, which Detective Benson merely relayed to the warrant-issuing judge. Fowler also notes that the undercover detective, in turn, relied on information supplied by a confidential informant; the information supplied by the confidential informant presumably includes many, if not all, of the details concerning the manner in which the controlled drug purchase was conducted, and of Fowler's behavior inside the apartment building. Thus, as Fowler points out, there are two levels of hearsay at issue here.

"An affidavit of a police officer relying on a statement made by someone else may be sufficient to support a finding of probable cause if there is a 'substantial basis' for crediting the statement of the informant." *Henry*, 292 S.W.3d at 365 (quoting *Neher*, 213 S.W.3d at 49). Although Detective Benson's warrant application contained multiple levels of hearsay, the warrant-issuing judge did not clearly err in concluding that there was a substantial basis in the affidavit for crediting those hearsay statements.

First, the warrant-issuing judge was justified in treating the information supplied to Detective Benson by the case detective as reliable. As the Missouri Supreme Court has noted, "'courts have consistently held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as a part of the probable cause determination.'" *State v. Baker,* 103 S.W.3d 711, 720-21 (Mo. banc 2003) (quoting *State v. Williams*, 9 S.W.3d 3, 16 (Mo. App. W.D. 1999) (in turn quoting *State v. Dudley*, 819 S.W.2d 51, 54-55 (Mo. App. S.D. 1991))). Fowler argues that this principle (that statements from one law enforcement officer to another are deemed reliable) is only applicable where the law enforcement officers are jointly engaged in a common investigation. *Baker* does not suggest,

5

however, that officer-to-officer communications can only be considered reliable where both officers are actively involved in a common investigation. Indeed, from a review of the *Baker* opinion, it is unclear what role the officer who applied for the warrant in that case (Sergeant James Wingo) had in the investigation of methamphetamine manufacturing, prior to the search warrant being issued. 103 S.W.3d at 714-15.

Fowler also emphasizes that the case detective was not identified by name in Detective Benson's affidavit. But, whether or not the case detective was identified, "the context of [the affidavit] indicates the information . . . came from some police source, either police records or another police officer." *Dudley*, 819 S.W.2d at 55. This is enough to deem the information reliable, even if the officer supplying the information is not identified. *Id.*[2]

The issuing judge was also justified in crediting the information supplied by the confidential informant. It is unnecessary for a search warrant application to demonstrate that a confidential informant is generally reliable (based for example on the police's prior dealings with the informant). Instead, "'[i]f the hearsay can be properly credited, there is no need to show the informant was reliable.'" *State v. Dowell*, 25 S.W.3d 594, 607 (Mo. App. W.D. 2000) (quoting *Williams*, 9 S.W.3d at 14). In assessing the reliability of information supplied by a confidential informant, an issuing judge can consider whether the informant "learned the information through personal observation," and "whether the informant's statements were corroborated through other sources or whether there is some other reason to believe that the informant can reasonably be relied upon." *Henry*, 292 S.W.3d at 365. Where an informant's information is detailed, it "bears

---

[2]    Fowler also argues that the case detective's information is unreliable, because Detective Benson's affidavit does not specify the "unidentified case-file detective['s] . . . role in the investigation prior to the controlled drug buy." Respondent's Br. at 10. We fail to see the significance of this observation. Whether or not the case detective had any *prior* role in investigating Fowler, the affidavit makes clear that the officer (1) received a report from a confidential informant that Fowler was dealing crack cocaine from his apartment; and (2) corroborated the confidential informant's tip by supervising a controlled drug purchase from Fowler at that address.

the unmistakable marks of firsthand observation." *State v. Berry*, 801 S.W.2d 64, 67 (Mo. banc 1990). And "'[w]hen the information upon which the warrant is based comes from one who claims to have witnessed a crime . . . the information carries with it indicia of reliability and is generally presumed to be reliable.'" *Baker*, 103 S.W.3d at 720 (quoting *Dawson*, 985 S.W.2d at 950).

In addition, "[c]orroboration from . . . independent observations of police officers creates a substantial basis for crediting the hearsay statements in an affidavit," even without a showing that the hearsay declarant is generally reliable. *Dowell*, 25 S.W.3d at 607 (quoting *Dawson*, 985 S.W.2d at 950); *see also Williams*, 9 S.W.3d at 14. Performance of a controlled drug purchase at a particular location corroborates a confidential informant's statements that a defendant is manufacturing or selling drugs from that location. *State v. Moiser*, 738 S.W.2d 549, 557 (Mo. App. E.D. 1987); *United States v. Pennington*, 287 F.3d 739, 742-43 (8th Cir. 2002).

In this case, the confidential informant's report that Fowler had "sold purported Cocaine Base from his apartment" was corroborated by the confidential informant's controlled drug purchase from Fowler, at that address. The confidential informant's detailed statements concerning what the informant observed inside Fowler's apartment during the controlled drug purchase – where Fowler stored his drugs, and his possession of a firearm – "bear[ ] the unmistakable marks of firsthand observation," and are entitled to some measure of credibility for that reason. *See State v. Taylor*, 373 S.W.3d 513, 523 (Mo. App. E.D. 2012) ("The issuing court could credit the hearsay in the affidavit because the confidential informant personally observed Defendant with drugs and firearms inside the residence."). In addition, those observations are corroborated, in substantial part, by the fact that a law enforcement officer personally observed

that the confidential informant was able to arrange, and execute, a purchase of crack cocaine from Fowler.[3]

Fowler argues that suppression was required under *State v. Hammett*, 784 S.W.2d 293 (Mo. App. E.D. 1989). In *Hammett*, a confidential informant related information to a law enforcement officer that a meeting to consume and distribute drugs was about to take place at the defendant's farm. *Id.* at 294, 298. The affidavit indicated that the confidential informant obtained his information from his wife, who in turn got the information from "another lady," who allegedly got the information from the mother of the defendant. *Id.* "Nothing in the affidavit disclose[d] the means or method by which, or the time when, the information passed from one person to another." *Id.* at 294. While the affidavit recounted that *the confidential informant* had provided reliable information on past occasions, "[n]othing in the affidavit . . . indicated anything about the credibility or reliability of the informant's wife, 'another lady,' or defendant's mother." *Id.* *Hammett* concluded that the affidavit failed to establish probable cause to justify issuance of a search warrant, and that it was unreasonable for officers to rely on the warrant. *Id.* at 296-97.

*Hammett* is wholly unlike this case. *Hammett* concerned fourth-hand hearsay, with no information provided concerning the reliability of three of the four hearsay declarants. Here, by contrast, the affidavit relates information observed by a law enforcement officer, and information

---

[3]    We do not rely on the conclusory statement in Detective Benson's affidavit that the confidential information "has been proven reliable." It appears that the statement that the informant "has been proven reliable" is based solely on the informant's arrangement of the controlled drug purchase from Fowler. If so, the statement adds nothing to the affidavit's description of the controlled drug purchase itself; the issuing judge was fully capable of assessing the reliability of the informant's information in light of the controlled drug purchase. To the extent the statement that the informant "has been proven reliable" was intended to refer to something else, the affidavit fails to refer, even generally, to any other indicia of reliability on which the issuing judge could rely. *See State v. Robinson*, 454 S.W.3d 428, 439-40 (Mo. App. W.D. 2015).

from a confidential informant that the officer's observations were able to corroborate in large measure. *Hammett* does not require suppression of evidence in this very different case.

The concurring opinion contends that Detective Benson's affidavit "is stated as though he had first-hand knowledge of the facts asserted therein," Concurring Op. at 2, and fails to disclose the multiple levels of hearsay contained in the affidavit. Similarly, Fowler argues that the warrant application fails to distinguish between the information derived from the case detective's personal observations, and the information derived solely from the confidential informant. Courts have long recognized, however, that police officers drafting search warrant applications are not trained legal experts, and are not held to the same standards as lawyers. Thus, the Supreme Court of the United States has

> recognized that affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area. Likewise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of "probable cause."

*Illinois v. Gates*, 462 U.S. 213, 235 (1983) (citations and internal quotation marks omitted). "[A] reviewing court should not quash a warrant by construing it in a hypertechnical, rather than a commonsense, manner." *Neher*, 213 S.W.3d at 49.

Detective Benson's affidavit makes sufficiently clear that the underlying information in the affidavit comes from another officer. The affidavit refers at the outset to "a detective with the Kansas City Missouri Police Department, Street Crimes Unit," and refers to that officer repeatedly as "the detective," in the third person. Nothing in the affidavit suggests that Detective Benson was personally involved in the narcotics investigation or the controlled drug buy. Indeed, Fowler himself argues that "the face of the warrant application" reflects that "Detective Benson had no personal knowledge of any of the information he swore to in the affidavit." Resp.

9

Br. at 8. The affidavit does not misrepresent or conceal the fact that Detective Benson's information was derived from a fellow officer.

In addition, even if it is not stated explicitly, the affidavit makes reasonably clear that the case detective witnessed what occurred outside Fowler's apartment building, but that the information as to what occurred *inside* Fowler's apartment building, and inside Fowler's apartment, comes from the confidential informant alone. *See Neher*, 213 S.W.3d at 49-50 (rejecting defendant's argument that search warrant application was deficient because it "did not expressly state the informant's information was based on personal observation"; instead concluding that "the issuing judge could infer that the confidential informant . . . had personally observed the information reported to the sheriff").[4]

In any event, any confusion as to whether the case detective personally observed events inside the apartment building would not undercut the probable cause determination. As we have explained above, the information concerning what occurred inside the apartment building bears sufficient indicia of reliability, even assuming that information came *solely* from the confidential informant's observations. The reliability of that information is *enhanced*, not reduced, if the case detective *also* observed some or all of what occurred inside the building.

In this case, the warrant application reflected that a confidential informant had informed a Street Crimes Unit detective that Fowler was selling crack cocaine from his apartment. The application recounted the details of a controlled drug purchase from Fowler at his apartment, including: that the case detective witnessed the confidential informant contact Fowler and arrange a meeting at Fowler's apartment building; that the informant was searched prior to

---

[4]    Because the face of the affidavit adequately reflects the source of the reported information, we do not believe this case is properly analyzed under *Franks v. Delaware*, 438 U.S. 154 (1978). We note that Fowler has not cited or relied on *Franks*, either in the trial court or on appeal.

meeting with Fowler; that the detective witnessed the confidential informant meet and enter the apartment building with Fowler; and that the informant handed the detective a substance testing positive for cocaine immediately after the informant left Fowler's apartment. Further, the application described the specific place in the apartment in which Fowler stored his drugs, and stated that Fowler had more drugs and a firearm in the apartment. The warrant application also related that Fowler had prior narcotics convictions.

We recognize that Detective Benson's affidavit fails to name the undercover detective, fails to provide information establishing the confidential informant's reliability unrelated to the controlled drug purchase, and fails to clearly state the source of particular information in the affidavit. We share the concurrence's concerns with the vagueness of the affidavit, and its admonition that law enforcement officers should present more detailed information in future warrant applications. Nevertheless, while the affidavit may be poorly drafted, the deficiencies do not render it legally insufficient under the deferential standard of review applicable to a search conducted pursuant to a warrant. The affidavit contains recent, specific information, corroborated in large measure by the case detective's personal observations, indicating that drugs were then present in Fowler's apartment, and that Fowler was actively dealing in drugs from the apartment. This was sufficient to justify issuance of a search warrant.

## Conclusion

The circuit court's suppression ruling is reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

_____
Alok Ahuja, Chief Judge

Judge Welsh concurs.
Judge Ellis concurs in separate opinion filed.

11



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD77167 |
| | ) | |
| LLOYD E. FOWLER, | ) | Opinion filed:  May 12, 2015 |
| | ) | |
| Respondent. | ) | |

## CONCURRING OPINION

While I agree that the trial court's decision must be reversed, I write separately

because I believe the case must be analyzed and decided within the context of the

United States Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct.

2674, 57 L.Ed.2d 667 (1978).

In his Affidavit/Application for Search Warrant, Detective Benson swore that:

> On 07-28-2009, at approximately 1710 hours, a detective with the Kansas City Missouri Police Department, Street Crimes Unit and a confidential informant responded to a residence at 1228A E. 4th Street, Kansas City, Jackson County, Missouri regarding an on-going narcotics investigation.  Prior to arrival, the confidential informant contacted the suspect by phone.  The confidential informant arranged to meet the suspect at his residence in order to purchase fifty dollars worth of Cocaine Base.
>
> Upon arrival, the detective parked directly in front of the multi-unit structure and handed the confidential informant fifty dollars of the pre-recorded Street Crimes Unit buy money.  The confidential informant

exited the detective's undercover vehicle and met with the suspect in front of the apartment building. The informant followed the suspect into the building through the center common door located at the south side of the structure, the confidential informant ascended the stairs to the second floor, then both the confidential informant and suspect entered the west facing door on the east side of the building. Once inside, the confidential informant handed the suspect fifty dollars of pre-recorded Street Crimes Unit buy money. The suspect accepted the buy money and retrieved several individually packaged beige rock-like substances, purported to be Cocaine Base, from the interior door frame to the apartment's balcony. The suspect handed the confidential informant two of the individually packaged substances in exchange for the buy money. While inside the apartment, the suspect displayed a .22 cal. handgun to the informant. After a brief conversation, the confidential informant left the apartment building and returned to the detective's undercover vehicle. The confidential informant immediately handed the detective the purchased substances before they drove from the area.

The confidential informant, who has been proven reliable, was searched prior to and after the narcotics transaction for weapons, narcotics, and currency with negative results. During the narcotics investigation the confidential informant was kept under constant surveillance and electronically monitored.

The detective field-tested the purported Cocaine Base, which weighed approximately 0.7 grams, utilizing the Scott Reagent System test kit. The substance tested positive to the presence of Cocaine. The purchased substance was packaged, sealed, signed, dated and placed in the unit safe to be forwarded to the Regional Crime Lab for further analysis.

Detective Benson's affidavit is stated as though he had first-hand knowledge of the facts asserted therein since none of the information asserted therein is attributed to any other source and he swears that the informant was "kept under constant surveillance and electronically monitored." His statements are made as though he were part of a surveillance team that witnessed the drug buy using binoculars and a listening device.

Were we simply determining whether the issuing judge or magistrate had a substantial basis for concluding that probable cause existed, which is ordinarily the scope of our review, our analysis would have to be limited to the four corners of the

2

Affidavit/Application for Search Warrant executed by Detective Benson. **State v. Valentine**, 430 S.W.3d 339, 343 (Mo. App. E.D. 2014).[1] And on the face of that document, if Detective Benson had first-hand knowledge of the matters sworn to therein and observed the money and drugs exchange hands, there was clearly more than a sufficient basis for the issuing judge or magistrate to have found probable cause to support the issuance of a search warrant.[2] But there is much more to the story.

In his motion to suppress, Fowler did not assert that the facts set forth in the affidavit were insufficient to support a finding of probable cause. The basis for the Fowler's motion was, rather, that some of the facts asserted in the affidavit were actually based upon hearsay rather than firsthand observation. In making that assertion, Fowler relied upon deposition testimony taken from Detective Benson, which was attached as an exhibit to the motion. Fowler argued that, when the hearsay nature of the information contained in the affidavit is considered, the affidavit is insufficient to support a finding of probable cause.

The trial court conducted a hearing on the Defendant's motion and accepted into evidence the deposition testimony of Detective Benson. Detective Benson's deposition testimony reflects that he had absolutely no direct knowledge of any of the facts asserted in his affidavit. In fact, he stated that he simply signed the warrant affidavit,

---

[1] *See also* **State v. Taylor**, 373 S.W.3d 513, 522 (Mo. App. E.D. 2012) ("On review, our task is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, we may not look beyond the four corners of the warrant application and the supporting affidavits.") (internal quotation and citation omitted)

[2] The majority opines that statements made in the affidavit are sufficient to support an inference that the various factual assertions made therein were based upon hearsay rather than firsthand knowledge. Under our standard of review, statements in the affidavit must be viewed in the light most favorable to the issuing court's finding of probable cause. It would seem that drawing the inference suggested by the majority would be inconsistent with that standard of review.

3

which had been prepared by the undercover officer,[3] without having had any other contact with the undercover officer or any contact whatsoever with the confidential informant. He said that he did nothing to verify any of the facts asserted in the affidavit prepared by the undercover officer before signing it and presenting it to the judge.

Furthermore, the State concedes that the undercover officer, likewise, did not personally observe any of the activity referenced in the affidavit that occurred while the informant and Fowler were inside the apartment building.[4] It acknowledges that all of the asserted "facts" related to what occurred inside the apartment were actually based upon what the informant told the undercover detective had occurred after returning to the car, rather than from the surveillance and electronic monitoring of the informant. Accordingly, the undercover officer also failed to properly attribute the hearsay nature of his information.

Thus, the record clearly reflects that many of the "facts" ultimately asserted and sworn to in Detective Benson's affidavit were actually based upon second-hand hearsay statements from the unidentified confidential informant to the unidentified undercover officer. The affidavit, however, wholly fails to identify this information as double-hearsay, and thereby deprived the issuing judge of the opportunity to evaluate the application in that light.

Those facts notwithstanding, however, the only way in which the foregoing information regarding the hearsay nature of the facts asserted in the affidavit could be

---

[3] Detective Benson's deposition testimony reflects that the warrant application was prepared by and given to him by the undercover officer. Benson testified that he merely checked it for grammatical errors and to make sure the legal description of the property was correct before signing it, taking it to the prosecutor for a signature, and presenting it to the judge.

[4] This concession is made for the first time on appeal. During the evidentiary hearing, the State argued that the affidavit reflects that the informant was under "constant surveillance by [the undercover detective] during the course of the buy."

4

properly considered by the trial court in addressing the motion to suppress, would be in the context of a *Franks* challenge. As noted *supra*, ordinarily, in considering whether probable cause existed to support the issuance of a search warrant, a reviewing court may not look beyond the four corners of the warrant application and the supporting affidavits. **State v. Neher**, 213 S.W.3d 44, 49 (Mo. banc 2007).

"*Franks* established a limited way for a defendant to challenge the truthfulness of the statements asserted in the application for warrant by showing that the statements were deliberately false or made with reckless indifference to the truth." **State v. Brown**, 382 S.W.3d 147, 167 (Mo. App. W.D. 2012) (emphasis omitted). "The Court believed that the requirement for a warrant that there be 'probable cause, supported by oath or affirmation,' would be 'reduced to a nullity' if a police officer were able to use 'deliberately falsified allegations' to demonstrate probable cause, and, 'having misled the magistrate, then was able to remain confident that the ploy was worthwhile." **Id**. (quoting **Franks**, 438 U.S. at 168, 98 S.Ct. at 2682). In *Franks*, the United States Supreme Court held that:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

**Franks**, 438 U.S. at 155-56, 98 S.Ct. at 2676).

*Franks* established a procedure requiring a defendant to plead specifically any alleged *Franks* violation and make an offer of proof. To make a *Franks* claim:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171, 98 S.Ct. 2684. "When a defendant has made a proper pleading and offer as required by *Franks*, the defendant is entitled to a hearing to demonstrate the contentions asserted." *Brown*, 382 S.W.3d at 167.

In the case at bar, in bringing his motion to suppress, Fowler did not specifically allege that the misleading or false aspects of the warrant affidavit were the result of deliberate falsehood or a reckless disregard for the truth on the part of the police, and he made no reference to *Franks*. But even if we assume, *arguendo*, that Fowler implicitly raised a *Franks* claim and that the evidence presented at the hearing established that the police deliberately or recklessly failed to attribute the hearsay information contained in the affidavit,[5] we would still have to conclude that the search warrant was valid and that the trial court erred in suppressing the evidence.

Under *Franks*, even where statements in the application for warrant are shown to be deliberately false or made with reckless disregard for the truth, in order for the fruits

---

[5] Clearly, in conducting the evidentiary hearing on the motion, the trial court and the parties treated the motion to suppress as though a *Franks* claim was properly raised. Fowler presented evidence to support his motion, and the trial court accepted and considered that evidence. Unless a *Franks* claim were made, the trial court's review would have been limited to the four corners of the application/affidavit, and no evidence could have been considered. *State v. Taylor*, 373 S.W.3d 513, 522 (Mo. App. E.D. 2012) ("On review, our task is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, we may not look beyond the four corners of the warrant application and the supporting affidavits.") (internal quotation and citation omitted)

6

of the search to require suppression, the sufficiency of the warrant application must be assessed with the falsehoods removed. "The effect of finding a *Franks* violation is that when the trial court determines there has been 'deliberate falsehood or [ ] reckless disregard for the truth' by the affiant, the trial court must set aside the false material and consider only the affidavit's remaining contents in determining whether probable cause existed at the time the warrant was issued." *Id*. (quoting **Franks**, 438 U.S. at 155-56, 98 S.Ct. at 2676). If the content of the warrant application with the falsehoods removed is still sufficient to establish probable cause, the warrant will not be voided, and the fruits of the warrant will not be suppressed.

Here, had the officers properly attributed the hearsay contained in the affidavit, the affidavit would still have contained sufficient facts to establish probable cause. Where the information conveyed was witnessed by a police officer and conveyed to the attesting officer, "courts have consistently held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as a part of the probable cause determination." **State v. Baker**, 103 S.W.3d 711, 720-21 (Mo. banc 2003) (internal quotation omitted). Accordingly, attribution of the information having been provided to Detective Benson by the undercover officer is of little import under the circumstances of this case.

If the information regarding what occurred inside the apartment were properly attributed to the unidentified, confidential informant, we would be left with the following. The confidential informant, in the presence of an unidentified undercover officer, called Fowler on the telephone and arranged to meet him at 1228A E. 4th St. to purchase cocaine base. Prior to arriving at that address, the informant was searched for

weapons, narcotics, and currency, and he was given fifty dollars in pre-recorded buy money. After the officer and the informant arrived at Fowler's apartment building, the officer saw the informant meet Fowler outside of the building and then enter the building with him. Shortly thereafter, the informant left the building, returned to the officer's vehicle, and handed the officer what appeared to be two small packages of cocaine base. The informant was again searched and did not have any other money, weapons, or narcotics on him.

The informant told the officer that he had gone to Fowler's second story apartment with him. The informant said that he had handed the buy money to Fowler and that Fowler had then retrieved several individually packaged beige rock-like substances from the interior door frame of the apartment's balcony door and given the informant the two packages that Fowler had turned over to the officer upon returning to the car. The informant further noted that Fowler had displayed a .22 caliber handgun at some point. The substance in the packages was field tested by the officer and tested positive for the presence of cocaine.

"An affidavit that relies on hearsay is sufficient to support a finding of probable cause if there is a substantial basis for crediting the hearsay." *Taylor*, 373 S.W.3d at 523 (internal quotation omitted). "The issuing court could credit the hearsay in the affidavit because the confidential informant personally observed [the defendant] with drugs and firearms inside the residence." *Id*. Furthermore, there was ample corroboration of the informant's statements to the officer. The officer witnessed the informant making the telephone call to Fowler and saw Fowler meet with the informant outside the apartment building at the designated time. In addition, he witnessed the

8

informant leave the car with the buy money, enter Fowler's apartment building with him, and return a short time later with a substance that tested positive for cocaine. These observations together provide more than sufficient corroboration for the informant's statements to be accepted as reliable.

In short, under the totality of the circumstances, there was a substantial basis for concluding there was a fair probability that contraband and evidence of criminal activity would be found at Fowler's residence. Thus, the trial court erred in ruling otherwise.

Nevertheless, this case shines a spotlight on the apparent prevalence of law enforcement's failure to prepare warrant applications in a manner so that the judge can properly perform the judicial function and duty of evaluating whether, under the totality of the circumstances, the warrant should issue. Clearly, the concealment of the hearsay nature of facts set forth by the police in a warrant application and/or supporting affidavit might well warrant suppression in a case where a *Franks* claim has been properly asserted and proven. "Omissions as well as affirmative misstatements can support a conclusion the officer knowingly or recklessly misled the magistrate judge." *United States v. Comer*, 565 Fed. Appx. 729, 732 (10th Cir. 2014). In assessing whether probable cause exists to support the issuance of a search warrant, a judge or magistrate is required to evaluate "whether, given all the circumstances . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "If an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant

9

evidence might be discovered, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.'" ***Franks***, 438 U.S. at 165, 98 S.Ct. at 2681 (internal quotation omitted). A judge or magistrate cannot make a proper determination of probable cause where the affiant utterly fails to mention that an informant was the source of the facts asserted. ***State v. Trenter***, 85 S.W.3d 662, 676 (Mo. App. W.D. 2002). "The issuing judge cannot accurately determine probable cause from the totality of the circumstances if he or she has no idea what the circumstances are. Without knowing that the information was provided by a confidential informant, the issuing judge cannot consider the totality of the circumstances as required by *Gates.*" ***State v. Trenter***, 85 S.W.3d 662, 676 (Mo. App. W.D. 2002).

Based on the existing case law and common sense, law enforcement officers must be deemed to be aware that judges, in deciding whether sufficient probable cause exists to justify the issuance of a search warrant, are required to assess the veracity and basis of knowledge of informants providing hearsay information. Armed with such knowledge, it is reckless for a law enforcement officer to omit from an affidavit the fact that information sworn to therein is based upon hearsay and to instead state such information in a manner that implies firsthand knowledge.[6] Absent identification of the information as hearsay, the judge or magistrate is not placed on notice of the need to assess the credibility of the informant and/or any independent corroboration of the hearsay statements.

---

[6] "[R]ecklessness may be inferred when the information was 'clearly critical' to a finding of probable cause." ***United States v. Comer***, 565 Fed Appx. 729, 732 n.2 (10th Cir. 2014).

10

In this case, the record indicates a recurrent practice of having administrative detectives sign affidavits that are prepared by undercover officers without providing any attribution to indicate the hearsay nature of those sworn statements. Knowing that the hearsay nature of evidence is an important consideration for the courts, it is certainly reckless for those administrative officers to fail to provide proper attribution for their sworn statements. It would be exceedingly simple for these administrative detectives to simply add a statement at the beginning of their affidavit like, "The following was reported to me by an undercover detective: . . .," and thereby avoid falsely implying that the administrative detective is speaking from first-hand knowledge. As a practical matter, providing such attribution is ordinarily unlikely to affect a judge or magistrate's ultimate probable cause determination where the information conveyed was witnessed by the undercover detective as "courts have consistently held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as a part of the probable cause determination." ***Baker***, 103 S.W.3d at 720-21 (internal quotation omitted). Such attribution is important, however, where the affidavit contains second and third-hand hearsay to allow the judge or magistrate to properly assess the reliability of the information provided. Knowledge of which officer is vouching for the credibility of a witness or how many times removed hearsay information is from the affiant can certainly impact upon the probative value of the information provided.

For all these reasons, I would strongly encourage all law enforcement agencies to instruct officers regarding the attribution of hearsay in warrant affidavits, especially with regard to distinguishing between what was actually observed by an officer and

11

what was instead conveyed to the officer through statements made by a witness or informant. Under the right circumstances, the failure to properly identify and attribute such hearsay could result in the suppression of evidence in future cases.

_Joseph M. Ellis_
Joseph M. Ellis, Judge